1  Carlyle (Cary) W. Hall III (CA BAR NO. 184842)
   chall@polsinelli.com
2  **POLSINELLI PC**
   CityScape
3  One E. Washington St., Ste. 1200
   Phoenix, AZ 85004
4  Phone: (602) 650-2000
   Fax: (602) 264-7033
5  Attorneys for Plaintiff

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                   (SAN FRANCISCO DIVISION)

10 MOON MOUNTAIN FARMS, LLC,        Case No.

                 Plaintiff,
11                                  Action pending in the United States District
                                    Court for the District of Arizona (2:13-cv-
12 vs.                              00349-SRB)

13 RURAL COMMUNITY INSURANCE        **NOTICE OF MOTION AND MOTION
   COMPANY,                         TO COMPEL COMPLIANCE WITH
14                                  SUBPOENA; MEMORANDUM OF
                                    POINTS AND AUTHORITIES IN
15              Defendant.          SUPPORT THEREOF
                                    AND
16                                  MOTION TO TRANSFER**

17

18                                  Judge:   Hon. William H. Orrick
                                    Date:    June 4, 2014
19                                  Time:    2:00 PM
                                    Place:   Courtroom 2, 17th Floor
20

21

22            **NOTICE OF MOTION AND MOTION**

23       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE

24 NOTICE THAT PLAINTIFF MOON MOUNTAIN FARMS, LLC moves to compel

25 non-party Wells Fargo & Co. ("Wells Fargo") to comply with a Subpoena to Testify at a

26 Deposition and Subpoena Duces Tecum dated September 26, 2013 (the "Subpoena")

27 issued by Moon Mountain relating to a case pending in the District of Arizona against

28
                                    1
   46811590.8
   46811590.8

1    Wells Fargo's wholly owned subsidiary, Rural Community Insurance Company

2    ("RCIC"). Pursuant to Fed.R.Civ.P. 45(f), Moon Mountain also moves to transfer this

3    Motion to United States District Judge Susan Bolton, who is overseeing the action

4    pending in Arizona.

5    Despite having wholly-owned subsidiaries operating in every state, including

6    Arizona where the underlying action is pending, Wells Fargo forces Moon Mountain to

7    come to this jurisdiction, where Wells Fargo is headquartered, to obtain compliance

8    with the Subpoena.[1]  From the few pages of documents that Wells Fargo's wholly-

9    owned subsidiary, RCIC, has actually produced in the action pending in Arizona, it is

10   apparent that Wells Fargo has been directing the defense of the Arizona litigation

11   matters for RCIC since at least early 2008. Despite this, Wells Fargo refuses to comply

12   with the Subpoena in an attempt to use corporate formalities to avoid a series of

13   unfavorable rulings in Arizona. In essence, Wells Fargo is playing a shell game with

14   the Plaintiff and attempting to skirt the authority of the Arizona District Court. This

15   Motion is supported by the following Memorandum of Points and Authorities, as well

16   as the Declaration of Jennifer Axel filed herewith.

17   Counsel for Moon Mountain certifies that it has met and conferred in good faith

18   with counsel for Wells Fargo in an attempt to resolve the disputed matter before filing

19   this action. *See* Declaration of Jennifer Axel in Support of Moon Mountain's Motion to

20   Compel, attached as Exhibit A ("Axel Decl.") at ¶¶ 15-19. Despite the good faith

21   efforts of counsel, the meet and confer was unsuccessful.

22                              **MEMORANDUM OF POINTS AND AUTHORITIES**

23   **I.        PROCEDURAL AND FACTUAL BACKGROUND**

24   **A.        The Arizona Action**

25

26   [1] Moon Mountain initially issued the Subpoena to Wells Fargo out of the District of
     Arizona, under the previous iteration of Rule 45. Axel Decl., Ex. A at ¶2.  Wells Fargo
27   objected, claiming it did not operate within 100 miles of the District of Arizona and that
     the Northern District of California was the appropriate venue. Axel Decl., Ex. A at ¶ 8.
28   It is for this reason that Moon Mountain seeks to enforce the Subpoena in this Court.

2

1    The Subpoena was issued on September 26, 2013, in relation to a lawsuit
2    pending in the District of Arizona, Case No. 2:13-cv-00349-SRB (the "Arizona
3    Action"), between Moon Mountain and RCIC, a wholly-owned subsidiary of Wells
4    Fargo.[2]  Axel Decl., Ex. A at ¶2.    In 2005, RCIC issued Multi-peril Crop Insurance
5    Polices numbered 04-951-787765 and 04-951-788712 (the "Policies") to Moon
6    Mountain for the 2007 crop year. *Id.* at ¶ 21. After a catastrophic freeze in January
7    2007 caused approximately $47 million worth of damage to Moon Mountain's nursery
8    crops, Moon Mountain submitted a claim to RCIC under the Policies (the "Claim"). *Id.*
9    at ¶ 22.  The Claim was for a fraction of the amount of Moon Mountain's actual loss.
10   *Id.* at ¶ 23.  RCIC denied the claim, leading to a six-year coverage arbitration (the
11   "Arbitration").[3] *Id.* at ¶ 24. After numerous delays and questionable tactics by RCIC to
12   avoid a determination, the arbitrator ultimately found that RCIC was required to
13   indemnify Moon Mountain under the Policies (the "Arbitration Award"). *Id.* at ¶ 26.
14   Moon Mountain brought the Arizona Action to recover damages sustained as a result of,
15   among other things, RCIC's bad faith in handling the Claim and the Arbitration. *Id.* at ¶
16   20.

17   Judge Bolton has ruled in favor of Moon Mountain on two distinct issues of
18   Arizona law.  First, an insurer owes a duty of good faith and fair dealing to its insured
19   not only with respect to the determination of whether coverage exists, but also in its
20   continued processing of the claim, including during the pendency of litigation regarding
21   coverage. *See Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, ¶ 24, 245, 256
22   P.3d 635, 642 (Ariz. App. 2011) ("an insurer that objects to coverage may not for that
23   reason disregard its claims-handling responsibilities pending resolution of the coverage
24   issue.")   Second, when an insurer asserts that its denial of coverage was reasonable
25   based on a legal interpretation, a court can find that the insurer has implicitly waived the

26
[2] *See* https://www.rcis.com/Pages/aboutus-whoweare.aspx
27   [3] The Policies necessitated the parties arbitrate whether RCIC was required to indemnify
28   Moon Mountain for its loss (the "Arbitration"). *Id.* at ¶ 25.

3

46811590.8
46811590.8

1  attorney-client privilege. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1177

2  (Ariz. 2000). By requiring Moon Mountain to seek relief from this Court, Wells Fargo

3  apparently hopes to avoid the adverse rulings by Judge Bolton.

4          1.    Judge Bolton found that RCIC waived the attorney-client privilege.

5       RCIC's bad faith conduct has continued through discovery in the Arizona

6  Action, forcing Moon Mountain to file a Motion to Compel to obtain even RCIC's

7  claims file, which RCIC argued was cloaked in privilege. *Id.* at ¶ 27. On January 8,

8  2014, Judge Bolton granted Moon Mountain's Motion to Compel, ordering that RCIC

9  produce its "post-denial" claims file and finding that RCIC had waived the attorney-

10  client privilege with respect to communications with its arbitration counsel, Henke-

11  Bufkin, that related to "adjusting or denying the claims" (the "Order").[4] *Id.* at ¶ 28.

12  Specifically, Judge Bolton found under *Lee* that "Defendant has impliedly waived the

13  attorney-client privilege by asserting that its evaluation of the law was reasonable." *Id.*

14  at ¶ 31.[5] Judge Bolton then ordered that RCIC produce "relevant communications with

15  counsel." *Id.* at ¶ 32.

16          2.    RCIC refuses to comply with Judge Bolton's Order.

17       Despite the clear terms of the Order, RCIC has produced only seven pages of

18  documents evidencing any claims adjustment. *Id.* at ¶ 33. Nearly two months after the

19  Order was issued (and on the eve of the deadline that documents were promised to be

20  disclosed to Moon Mountain), RCIC filed a Motion for Clarification and Protective

21  Order, claiming that Judge Bolton could not have ordered that its communications with

22  Henke-Bufkin were required to be produced. *Id.* at ¶ 34. On the same day, Moon

23  Mountain moved for sanctions for RCIC's failure to comply with the Order. *Id.* at ¶ 35.

24  On March 27, 2014, Judge Bolton denied RCIC's motion and ordered that RCIC

25

---

26  [4] RCIC unsuccessfully argued that there was a distinction between "pre-denial" and "post-denial" claims files. Axel Decl., Ex. A at ¶ 29.

27  [5] RCIC also unsuccessfully argued that there was a distinction between "coverage" and "arbitration" counsel that Judge Bolton found was not supported by Arizona case law.

28  *Id.* at ¶ 30.

4

1 produce **all** of its communications with Henke-Bufkin from retention through the date
2 of the arbitration to the court for an *in-camera* review. *Id.* at ¶ 36. Judge Bolton
3 reserved ruling on the Motion for Sanctions pending the *in camera* review. *Id.* at ¶ 37.

4      3.     RCIC is using corporate formalities to avoid discovery.

5       In the few pages of documents that RCIC actually disclosed, were documents
6 demonstrating that Henke-Bufkin was communicating with Wells Fargo in-house
7 attorney (Cynthia Swan) and Risk Manager (Cynthia Rowe), regarding the Arbitration,
8 rather than RCIC employees. *Id.* at ¶ 38. Indeed, RCIC has asserted privilege over
9 these communications. *Id.* at ¶ 39. In its Motion for "Clarification", which really was a
10 Motion for Reconsideration, RCIC argued that it had no documents responsive to the
11 Order granting the Motion to Compel (despite its opposition to the motion in the first
12 place). *Id.* at ¶ 40. It is apparent that the game that RCIC is now playing is to hide
13 behind corporate formalities: RCIC states it does not have any documents responsive to
14 the Order because they are held by Wells Fargo. In an effort to preclude the necessity
15 of this Motion, Moon Mountain has repeatedly requested that RCIC confirm it will be
16 providing documents from Wells Fargo to Judge Bolton pursuant to her order. *Id.* at ¶
17 41. RCIC has not responded to these inquiries.

18       Yet, during the meet and confer, Ms. Swan, the Wells Fargo lawyer involved in
19 the communications with RCIC's arbitration counsel, claimed that any documents in the
20 possession of Wells Fargo would also be in the possession of RCIC. It is clear that
21 Wells Fargo and RCIC have not gotten their stories straight. They are too concerned
22 with avoiding the clear direction of Judge Bolton's Order. Therefore, Moon Mountain
23 seeks this Court's assistance in enforcing Judge Bolton's Order and applying it to
24 RCIC's parent company, Wells Fargo.

25
26
27
28

5

46811590.8
46811590.8

**B.**  **Moon Mountain's Requests for Documents and Wells Fargo's Objections.**

Pursuant to L.R.Civ. 37-2, below are Moon Mountain's two requests for documents and Wells Fargo's objections:

(1)  All documents regarding the Policies, the Claim and the Arbitration or the Arbitration Award.

**Objection:** Improper attempt to circumvent the authority of the presiding judge over the discoverability of the requested documents, since Request No. 1 is currently the subject of a pending motion to compel in the primary action, Civil Action No. 2:13-CV-00349-SRB.[6]

(2)  All documents regarding the amount of reserves set aside by Wells Fargo or RCIC for any indemnification or bad faith claims filed against RCIC.

**Objection:** Outside the scope of permissible discovery, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome because it seeks documents regarding reserves for claims by any party against RCIC, as opposed to reserves for the claim by Plaintiff and, further, the request is unlimited in its scope or duration. The request for reserve information is also [sic] improperly seeks confidential and proprietary information of Wells Fargo, in violation of Rules 45(c)(1), 45(c)(3)(A)(iii-iv) and 45(c)(3)(B)(i). The purpose of requiring reserves is to ensure that there is adequate money to pay claims. The setting of reserves is an accounting function; it is not an indication of the validity of a claim or the value of a claim.

Axel Declaration, Ex. A at ¶ ¶ 3, 6-7.

In addition to the specific objections, Wells Fargo also asserted a number of general objections, including that the Subpoena:

1.  seeks documents in the possession of RCIC, rather than Wells Fargo and uses an overbroad definition of Wells Fargo to include its subsidiaries;

2.  seeks documents and information protested from disclosure by the attorney-client privilege and attorney-client work product doctrine;

3.  is vague, ambiguous, overbroad.

---

[6] As discussed above, Judge Bolton granted the Motion to Compel in favor of Moon Mountain.

6

46811590.8
46811590.8

1          4.      requests electronic records that are "not part of any physical file and are,
2   therefore, not readily available;"

3          5.      did not permit a reasonable time for compliance; and

4          6.      was not properly served or accompanied by reimbursement of anticipated
    expenses or requisite fees.

5
6          Axel Decl., Ex. A at ¶ 8. As discussed in more detail below, each of the General
    Objections were addressed with Wells Fargo and has either been waived or has no
7   merit.

8          The Subpoena also requests Wells Fargo's appearance for a deposition pursuant
9   to Fed.R.Civ.P. 30(b)(6).  *Id.*  The Subpoena sets forth four topics of deposition:

10  • RCIC's relationship with Wells Fargo

11  • Moon Mountain's Policies, Claim, the Arbitration, or the Arbitration
12    Award.

13  • The handling, including denial, of Moon Mountain's Claim.

14  • The amount of reserves set aside by Wells Fargo or RCIC for any
15    indemnification or bad faith claims filed against RCIC.

16         Wells Fargo stated it would not be producing anyone for the deposition under the
17  same grounds as its objections to producing documents.  *Id.* at ¶ 4.

18     **C.     Additional Communications between Moon Mountain and Wells**
19         **Fargo**

20         After the initial objections to the Subpoena were received, Moon Mountain sent a
21  letter to Wells Fargo responding to each of its objections. Axel Decl., Ex. A at ¶¶ 10,
22  11.  Wells Fargo responded and indicated it still would not be complying with the
23  Subpoena.  *Id.* at ¶ 12.    Pursuant to L.R.Civ. 37-1, undersigned counsel spoke with
24  Cynthia Swan, counsel for Wells Fargo, on January 29, 2014.  *Id.* at ¶ 15.   Ms. Swan
25  indicated that the documents in the possession of Wells Fargo were either privileged or
26  also in the possession of RCIC and that Wells Fargo would not be complying with the
27  Subpoena in any manner.  *Id.* at ¶ 16.

28
                                            7
    46811590.8
    46811590.8

## II.    LEGAL ARGUMENT

Federal Rule of Civil Procedure 45 allows Moon Mountain to seek documents and depositions from a third-party, like Wells Fargo. Fed.R.Civ.P. 45; *see also LG Display Co. Ltd. v. CHI MEI Optroelectronics Corp.*, 2009 WL 223585 (S.D. Cal. 2009); *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002); Advisory Committee Notes to 1991 Amendment of Rule 45. The standard of relevance is the same as under federal rules 26(b) and 34: whether the information sought is reasonably calculated to lead to the discovery of admissible evidence. *See LG Display*, 2009 WL 223585 at * 1; *Schwartz*, 211 F.R.D. at 392. "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt ... the court should be permissive." *Negotiated Data Solutions LLC v. Dell, Inc.*, 2009 WL 733876 (N.D. Cal. 2009) (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D.Cal. 2006)).

### A.    This Motion should be transferred to Judge Bolton.

Recognizing the difficulty of a judge sitting in one district to issue decisions about relevance for discovery pending in another jurisdiction, Rule 45 was recently amended to allow a court hearing a motion dealing with compliance with a subpoena issued in relation to litigation pending in another jurisdiction to transfer the motion back to the judge handling the litigation upon consent of the party subject to the subpoena or under "exceptional circumstances." *E.g.* Fed.R.Civ.P. 45(f). Although the Subpoena was issued prior to the effective date of the 2013 Amendments to Rule 45, amendments should be applied to pending cases unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice. Fed.R.Civ.P. 86(a)(2)(A)-(B). Here, there would be an injustice in not enforcing the new rule as it was meant to stop the type of gamesmanship and waste of judicial resources caused by Wells Fargo and its subsidiary, RCIC.

8

1    Given that the rule allowing transfer of a motion to enforce a subpoena has only

2 been in effect for approximately three months there is scant authority on what

3 constitutes "exceptional circumstances." However, the Advisory Committee did

4 provide guidance:

5    Although in the absence of consent, the court may transfer in exceptional
circumstances, and the proponent of transfer bears the burden of showing
6    that such circumstances are present. The prime concern should be avoiding
7    burdens on local nonparties subject to subpoenas, and it should not be
assumed that the issuing court is in a superior position to resolve subpoena-
8    related motions. In some circumstances, however, transfer may be
9    warranted in order to avoid disrupting the issuing court's management of
the underlying litigation, as when that court has already ruled on issues
10   presented by the motion or the same issues are likely to arise in discovery
in many districts. Transfer is appropriate only if such interests outweigh the
11   interests of the nonparty served with the subpoena in obtaining local
12   resolution of the motion. Judges in compliance districts may find it helpful
to consult with the judge in the issuing court presiding over the underlying
13   case while addressing subpoena-related motions.

14   Fed.R.Civ.P. 45(f) Advisory Comm. Notes, 2013 Amendment, Subdivision (f).

15   In one case that has been issued since the amendment to Rule 45, the Southern

16 District of Ohio transferred a motion to compel filed by the FTC seeking compliance

17 with a subpoena issued to a telemarketing company requesting communications with a

18 defendant in a case in the Southern District of Florida (the "Florida Litigation"). *FTC v.*

19 *A+ Fin. Ctr., LLC*, 2013 WL 6388539 (S.D. Ohio 2013). The *FTC* sought to transfer

20 the subpoena to the court in Florida because of its familiarity with the underlying issues,

21 the party subject to the subpoena had already filed a motion for protective order in the

22 Florida Litigation and the interests of consistency of outcomes and judicial economy.

23 *Id.* at * 2. The FTC had attempted to obtain the same documents from the parties to the

24 Florida Litigation to no avail and there were motions to compel pending in front of the

25 judge overseeing the Florida Litigation that were related to the issues. *Id.* The court

26 ultimately found that exceptional circumstances were present and transferred the motion

27 to compel. *Id.*

28

9

46811590.8
46811590.8

1    Here, the circumstances warranting transfer are even more compelling. There
2  has already been a decision by Judge Bolton that will affect Wells Fargo's compliance
3  with the Subpoena that involves distinct issues of Arizona law, including the waiver of
4  attorney-client privilege. RCIC, Wells Fargo's subsidiary, has refused to comply with
5  this decision and RCIC is currently under an order to submit documents to Judge Bolton
6  for in camera review. Given the evidence recently disclosed by RCIC that shows that
7  Wells Fargo has been directing the defense of RCIC since at least 2008, Wells Fargo
8  cannot seriously argue that it will suffer any prejudice or burden by the transfer of this
9  action to Judge Bolton. To the contrary, not transferring this Motion could seriously
10  impact Moon Mountain's nearly year-long efforts to obtain discovery from RCIC.

11    **B.    Wells Fargo Does Not Have Any Valid Objection to Request No. 1**

12    Wells Fargo's only substantive objection to the request for documents relating to
13  the Policies, the Claim and the Arbitration Award was that the Motion to Compel was
14  pending in front of Judge Bolton in the Arizona Action. Axel Decl., Ex. A at ¶ 6. Judge
15  Bolton has subsequently ruled in favor of the discoverability of the documents, negating
16  Wells Fargo's objection. *Id.* at ¶ 28. Judge Bolton also ruled that RCIC has waived the
17  attorney-client privilege with respect to communications regarding adjusting or denying
18  the claim by asserting that its denial of coverage was reasonable based on its evaluation
19  of the law. *Id.* at ¶ 31.

20    In its meet and confer with Wells Fargo, Moon Mountain provided notice of the
21  Order, which Wells Fargo stated it was aware of, but continued to assert that the Order
22  did not find that RCIC (and thus Wells Fargo) had waived the privilege with respect to
23  communications with Henke-Bufkin. *Id.* at ¶ 18. In light of Judge Bolton's recent
24  decision on the Motion for Clarification (denying it in its entirety), Wells Fargo and
25  RCIC cannot continue to assert this position. To the extent that the Henke-Bufkin
26  documents contain attorney-client information regarding the adjusting or denial of the
27  Claim, RCIC's waiver of that privilege (as Judge Bolton has found) is also applicable to

28

10

46811590.8
46811590.8

1  Wells Fargo. *E.g.* Restatement (Third) of the Law Governing Law § 73, cmt. d ("For
2  purpose of the privilege, when a parent corporation owns controlling interest in a
3  corporate subsidiary, the parent corporation's agents who are responsible for legal
4  matters of the subsidiary are considered agents of the subsidiary"); 1 Corporate Counsel
5  Guidelines § 1.22 (2013) (either parent or subsidiary can waive attorney-client privilege
6  for communications with outside counsel).[7]  Request No. 1 is narrowly tailored and
7  seeks only documents regarding issues highly relevant to Moon Mountain's claims in
8  the Arizona Action.  The documents in Wells Fargo's possession responsive to this
9  request are relevant and should be produced.

10      **C.     Moon Mountain is entitled to reserve information sought in Request**
11           **No. 2.**

12      As recognized by numerous courts within the Ninth Circuit, information on
13  reserves is relevant to an insurance bad faith claim and therefore within the scope of
14  permissible discovery. *E.g. Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2009 WL
15  1457974 at * 3-5 (N.D. Cal. 2009); *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662,
16  667-668 (W.D. Wash. 2007) (reserve information relevant in bad faith disputes and not
17  subject to work product protection).  Reserve information is relevant and discoverable
18  because it may shed light on the relationship between an insurer's payment or non-
19  payment of claims and its evaluation of scope of the loss or obligation to its
20  policyholder. *See Flintkote*, 2009 WL 1457974 at * 3-5; *Country Life Ins. Co. v. St.
21  Paul Surplus Lines Ins. Co.*, 03-1224, 2005 WL 3690565 at *8-9 (C.D. Ill. 2005)
22  (documents regarding reserves are "reasonably calculated to lead to discovery of

23
24

25  [7] In diversity cases, privileges are determined by applicable state law. Fed.R.Evid. 501;
*In re Mortgage and Realty Trust*, 212 B.R. 649, 651 (C.D. Cal. 1997).  Arizona law
26  applies to the Arizona Action and Arizona the Restatement if there is no contradicting
authority. *E.g. Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 201, 165
27  P.3d 173, 179 (Ariz. App. 2007).

28
                                    11

1 admissible evidence" and not privileged as they were prepared in the ordinary course of
2 an insurance company's business).

3     In *Flintkote*, like here, the insurance company argued that reserves were
4 irrelevant and protected as confidential business information. *Flintkote*, 2009 WL
5 1457974 at \* 1. In reviewing whether this information was discoverable, the Court
6 focused on the plaintiff's allegations, which included that the insurance company acted
7 intentionally and unjustifiably regarding coverage. *Id.* at \*4. The court in *Flintkote*
8 found that reserve information was relevant because it could show a disconnect between
9 what the company anticipated its loss would be and its conduct towards plaintiff, as well
10 as leading to relevant information about the insured's bad faith claims. *Id.* The same
11 holds true here – there are allegations that RCIC acted in conscious disregard of the
12 rights of insureds and ignored evidence generated during the course of the coverage
13 arbitration that it was liable for the Claim. Axel Decl., Ex. A at ¶ 42. This information
14 is highly relevant to Moon Mountain's claims.

15     Wells Fargo contends, based on a single unpublished and inapposite case from a
16 district court in another circuit, *Unishippers Global Logistics, LLC v. DHL Exp. (USA),*
17 *Inc.*, 2011 WL 2634628 at \*3 (D. Utah 2011), that reserve information is "generally
18 irrelevant." Axel Decl., Ex. A at ¶ 43. *Unishippers* involved whether evidence
19 accidentally disclosed regarding the defendant's litigation reserves for a breach of
20 contract action could be precluded from trial pursuant to a motion in limine.
21 *Unishippers* at \* 3. *Unishippers* did not involve any claims relating to insurance bad
22 faith or the discoverability of reserves in that context and is totally inapplicable to the
23 present matter. There can be no dispute that Moon Mountain is entitled to documents
24 regarding Wells Fargo's reserves for claims against RCIC.

25     Moon Mountain is not trying to circumvent Rule 34 by seeking this information
26 from Wells Fargo, rather than RCIC. The few documents actually disclosed by RCIC
27 indicate that Wells Fargo (not RCIC) was responsible for the indemnity payment and

28

12

1    the expenses of the arbitration and was administering the Claim. Axel Decl., Ex. A at ¶

2    44.  It follows that it was Wells Fargo, not RCIC, responsible for maintaining reserves.

3    Further, with respect to Wells Fargo's objection that reserve information is confidential,

4    the parties in the Arizona Action already have a protective order in place. *Id.* at ¶ 19.

5    Any information that Wells Fargo deems confidential can be designated as such under

6    the protective order. *Id.* at ¶ 19. In the alternative, Moon Mountain is willing to enter in

7    to the same protective order in this Miscellaneous Action. *Id.* at ¶ 19. This information

8    has already been communicated to counsel for Wells Fargo. *Id.* at ¶ 19.

9        In addition to the reserve information for Moon Mountain's claim, Moon

10   Mountain is also entitled to information regarding reserves set aside by Wells Fargo or

11   RCIC for any indemnification or bad faith claims filed against RCIC. Under Arizona

12   substantive law, which governs the Arizona Action, an insurer's treatment of similarly

13   situated policyholders is highly relevant. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490,

14   498, 733 P.2d 1073, 1081 (1987) (holding that evidence of similar claims is relevant in

15   bad faith case.)  Wells Fargo blindly asserts that it would be an undue burden to

16   determine whether other indemnification claims were brought by similarly situated

17   policyholders. *Id.*  Merely asserting an objection of "undue burden" without more is

18   insufficient. *E.g., In re Yassai*, 225 B.R. 478, 483-84 (Bankr. C.D. Cal. 1998) (finding

19   that the party moving to quash failed to meet its heavy burden in demonstrating an

20   "undue burden" because they "presented no evidence pertaining to the time, cost, or

21   inconvenience" that would be entailed in responding to the subpoenas) (citing *Northrop*

22   *Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 403 (D.C.Cir.1984); *Williams v. City*

23   *of Dallas,* 178 F.R.D. 103, 109 (N.D.Tx.1998)) (other citations omitted). It should take

24   no more than minutes for Wells Fargo to determine the reserves it had set aside for

25   indemnification or bad faith claims.

26

27

28

13

**D. Wells Fargo's general objections have no merit.**

1. Wells Fargo must produce documents responsive to the Subpoena

It is well established that a parent holding company, like Wells Fargo, has legal control over documents of its subsidiaries and are required to produce relevant documents. *E.g., United States v. Int'l Union of Petroleum and Indus., Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989); *In re ATM Fee Antitrust Litig.,* 233 F.R.D. 542, 544 (N.D. Cal. 2005) (recognizing that the "control" test applies to requests under Rule 34 and Rule 45, and finding that defendant bank holding company had legal control over its subsidiaries and the documents in their possession). Whether some of these documents are also in the possession or control of RCIC does not preclude Wells Fargo's compliance with the Subpoena. Courts have held that parties are required to comply with a Subpoena, regardless of whether they may be duplicative of documents produced by parties to a lawsuit, for among other reasons to test the accuracy and completeness of a party's responsiveness to Rule 34 requests. *E.g. LG Display,* 2009 WL 223585 at * 3. Moon Mountain is not attempting to circumvent Rule 34 by seeking documents from Wells Fargo; rather, it is attempting to ensure it has all documents and evidence regarding its claims. Further, recent discovery in the Arizona Action has indicated that Wells Fargo employees were responsible for and involved with the Claim from, at a minimum, the filing of the Arbitration through the issuance of the Final Award and that Wells Fargo was financially responsible for the Claim. Axel Decl., Ex. A at ¶ 44.

As demonstrated by Judge Bolton's recent order requiring RCIC to provide for in camera review all of its correspondence with Henke-Bufkin, there is serious concern that RCIC is not complying with its discovery obligations in this matter. Given RCIC's conduct to date, Moon Mountain is justifiably concerned that RCIC will attempt to hide behind corporate formalities by disclosing only documents between Henke-Bufkin and RCIC, when it appears that Wells Fargo was the entity actually responsible for dealing

14

1  with outside counsel during the Arbitration. Compliance with the Subpoena is
2  necessary to preclude any doubt that all relevant documents have been disclosed.

3          2.      The Rule 45 issues have been cured or waived.

4          Moon Mountain addressed these issues in its November 26, 2013 letter. Axel
5  Dec., Ex. A at ¶ 10.       In correspondence dated December 18, 2013, Wells Fargo
6  acknowledged Moon Mountain's willingness to cure all issues related to service and/or
7  compliance with Rule 45. *Id.* at ¶ 13.

8          3.      Assertion of privilege does not excuse compliance with Rule 45.

9          That a privilege could apply to documents responsive to a subpoena does not
10 excuse compliance, but rather requires a privilege log so the party seeking the
11 documents can determine whether the privilege applies. *See* Rule 45(e)(2)(A); *Forsythe*
12 *v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) *report and recommendation adopted*, ,
13 2012 WL 1833393 (D. Nev. 2012) ("[Rule 45] requires a person withholding
14 subpoenaed information under a claim of privilege to expressly make the claim and to
15 provide a privilege log."). Here, however, Judge Bolton has already found that RCIC
16 (and thus Wells Fargo) have waived the attorney-client privilege with, at a minimum,
17 Henke-Bufkin, regarding any communications that relate to adjusting or denying the
18 Claim. Axel Decl., Ex. A at ¶ 28.[8] Accordingly, to the extent that Wells Fargo is going
19 to attempt to claim privilege over any communications between itself and Henke-
20 Bufkin, those should be submitted to Judge Bolton pursuant to her March 27, 2014
21 Order for in camera review, as Wells Fargo employees were clearly acting as agents of
22 RCIC with respect to these communications.[9]

23

24 [8] Wells Fargo employees involved with the Claim were acting as agents of RCIC and
   thus the privilege has also been waived as to those communications. *See* § 2(b), *supra*.
25 Indeed, RCIC has admitted that Wells Fargo employees were acting as its agents by
   including correspondence between them and Henke-Bufkin on privilege logs exchanged
26 in the Arizona Action. Axel Decl., Ex. A at ¶ 39.

27 [9] On March 29, 2013, counsel for Moon Mountain asked counsel for RCIC whether it
   would be including documents between Wells Fargo and Henke-Bufkin to Judge
28 Bolton. RCIC's counsel has failed to respond. Axel Decl., Ex. A at ¶ 41.

15

4. Electronically Stored Information

Under Fed.R.Civ.P. 45(d), a party is required to produce electronically stored information as it is kept in the ordinary course of business. Wells Fargo's objected that all electronically stored information imposes an undue burden because it is not in the "physical file" is barred by Rule 45. Axel Decl., Ex. A at ¶ 5. Rule 45 requires that Wells Fargo demonstrate that the information is not readily accessible because of undue burden or cost. *E.g. LG Display*, 2009 WL 223585 at * 2-3. Moon Mountain requested Wells Fargo to identify the cost associated with retrieving information responsive to the Subpoena. Axel Decl., Ex. A at ¶ 11. Wells Fargo refused to do so, on the basis that no documents were discoverable under the Subpoena. *Id*. at ¶ 14. Wells Fargo has failed to show that reviewing electronically stored information would be an undue burden and this objection cannot be sustained.

5. Overbroad

As discussed above, the Subpoena was narrowly tailored to seek only information regarding Moon Mountain, the Policies, its Claim and the Arbitration. There is nothing overbroad about this request. The reserve information is similarly narrowly tailored to only seek information that is potentially relevant to RCIC's claim.

**D. Wells Fargo Must Appear for A Deposition.**

Wells Fargo's did not provide separate or specific objections to appearing for a deposition, but rather incorporated the objections made with respect to the requests for documents. Axel Decl., Ex. A at ¶ 9. For the reasons set forth above with respect to general relevance and propriety of the Subpoena, Wells Fargo must appear for a deposition regarding the topics set forth in Exhibit A to the Subpoena.

**III. CONCLUSION**

Not surprisingly, Wells Fargo and its wholly-owned subsidiary, RCIC, are playing a game of the hide the ball with respect to information and documents highly relevant to Moon Mountain's claims. Despite Moon Mountain's reasonable requests

16

and its efforts to address Wells Fargo's concerns, Wells Fargo has categorically refused to comply with the Subpoena. As explained above, none of Wells Fargo's objections excuse its non-compliance, and the documents sought by Moon Mountain are relevant to each of Moon Mountain's claims. Accordingly, Moon Mountain requests that the Respondent, Wells Fargo, be compelled to comply with the Subpoena. A proposed order is attached for the Court's convenience. Under the new iteration of Rule 45, a court where compliance is required can transfer a motion seeking compliance with a Subpoena to the court where the action is pending if the person subject to the subpoena consents or the court finds exception circumstances. Fed.R.Civ.P. 45(f). Given the relationship between RCIC and Wells Fargo and the current orders of Judge Bolton, exceptional circumstances exist here.

**RESPECTFULLY SUBMITTED** this 4th day of April, 2014.

**POLSINELLI PC**

By:_____

Carlyle W. Hall
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Attorneys for Plaintiff

17

46811590.8
46811590.8

1  **CERTIFICATE OF SERVICE**

2  I hereby certify that on April 4, 2014, the foregoing document was filed with the

3  Clerk of the District Court of the Northern District of California.

4
   Copies of the foregoing document were mailed via U.S. Mail to the following
5
   parties:
6
                 Cynthia Swan
7                Wells Fargo & Company
                 Senior Company Counsel
8                Wells Fargo Center
9                90 South Seventh Street
                 Minneapolis, MN 55402
10               *Attorneys for Wells Fargo Bank*
11
                 Barbara J. Dawson
12               Jeff Willis
                 Erica J. Stutman
13               Snell & Wilmer LLP
14               One Arizona Center
                 400 E. Van Buren, Suite 1900
15               Phoenix, AZ 85004-2202
16
                 William Kurt Henke
17               Elizabeth T. Bufkin
                 Henke-Bufkin, P.A.
18               P.O. Box 39
19               Clarksdale, Mississippi 38614
20
21               By: _____
22
23
24
25
26
27
28
                                    18
   46811590.8
   46811590.8

# EXHIBIT A

1  Carlyle (Cary) W. Hall III (CA BAR NO. 184842)
   chall@polsinelli.com
2  **POLSINELLI PC**
   CityScape
3  One E. Washington St., Ste. 1200
   Phoenix, AZ 85004
4  Phone: (602) 650-2000
   Fax: (602) 264-7033
5  Attorneys for Plaintiff

6

7              **IN THE UNITED STATES DISTRICT COURT**

8              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9                       **(SAN FRANCISCO DIVISION)**

10 | MOON MOUNTAIN FARMS, LLC, | Case No. –MISC |
   |---|---|
11 | Plaintiff, | Action pending in the United States District |
   | | Court for the District of Arizona (2:13-cv- |
12 | vs. | 00349-SRB) |
13 | RURAL COMMUNITY INSURANCE | **DECLARATION OF JENNIFER AXEL** |
14 | COMPANY, | **IN SUPPORT OF MOTION TO** |
   | | **COMPEL COMPLIANCE WITH** |
15 | Defendant. | **SUBPOENA** |
   | | **AND** |
16 | | **MOTION TO TRANSFER** |

17

18     I, Jennifer J. Axel, declare and state as follows.

19        1.    I am an attorney with the firm of Polsinelli, PC, counsel of record for

20 Plaintiff Moon Mountain Farms, LLC ("Moon Mountain") in the action currently

21 pending in the District of Arizona, Case No. 2:13-cv-00349-SRB (the "Arizona

22 Action"), between Moon Mountain and Rural Community Insurance Company

23 ("RCIC"). I submit this declaration in support of Moon Mountain's Motion to Compel

24 Compliance with the Subpoena issued to Wells Fargo & Company and Motion to

25 Transfer.

26

27

28

                                    1

47698379.1
47698379.1

2. Moon Mountain issued a Subpoena to Wells Fargo & Co. ("Wells Fargo") on September 26, 2013 (the "Subpoena"), in relation to the Arizona Action. A true and correct copy of the Subpoena is attached hereto as Exhibit 1.

3. The Subpoena requested two categories of documents:

Request No. 1: All documents regarding the Policies, the Claim and the Arbitration or the Arbitration Award.

Request No. 2: All documents regarding the amount of reserves set aside by Wells Fargo or RCIC for any indemnification or bad faith claims filed against RCIC.

See id.

4. The Subpoena also sought the deposition of the person most knowledge at Wells Fargo regarding: (1) RCIC's relationship with Wells Fargo; (2) Moon Mountain's Policies, Claim, the Arbitration, or the Arbitration Award; (3) The handling, including denial, of Moon Mountain's Claim; and (4) The amount of reserves set aside by Wells Fargo or RCIC for any indemnification or bad faith claims filed against RCIC. See id.

5. On October 11, 2013, counsel for Moon Mountain received a letter from Cynthia Swan, Senior Company Counsel at Wells Fargo, objecting to the Subpoena. A true and correct copy of the October 11, 2013 Letter is attached as Exhibit 2.

6. Wells Fargo objected to Request No. 1 on the grounds that it was "an improper attempt to circumvent the authority of the presiding judge over the discoverability of the requested documents, since Request No. 1 is currently the subject of a pending motion to compel in the primary action, in the United States District Court for the District of Arizona before the Honorable Susan R. Bolton, Civil Action No. 2:13-CV-00349-SRB." Id.

7. Wells Fargo objected to Request No. 2 as "outside the scope of permissible discovery, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome because it seeks documents regarding reserves for claims by any party against RCIC, as opposed

2

1   to reserves for the claim by Plaintiff and, further, the request is unlimited in its scope or

2   duration. The request for reserve information is also [sic] improperly seeks confidential

3   and proprietary information of Wells Fargo, in violation of Rules 45(c)(1),

4   45(c)(3)(A)(iii-iv) and 45(c)(3)(B)(i). The purpose of requiring reserves is to ensure that

5   there is adequate money to pay claims. The setting of reserves is an accounting

6   function; it is not an indication of the validity of a claim or the value of a claim." *Id*.

7       8.      In addition to the specific objections, Wells Fargo also provided a number

8   of general objections to the Subpoena:

9       (1)     That the Subpoena "seeks to impose a duty upon it to locate,
    review, produce and testify about documents that are not the records of Wells
10  Fargo & Company, the entity served, but, but [sic] rather records of Rural
    Community Insurance Company. The Subpoena may only properly seek
11  documents and testimony of Wells Fargo & Company, the entity to which the
    Subpoena was issued and served. Specifically, Wells Fargo objects to Definition
12  No. 1 of the instructions, which defines the subpoenaed party as Wells Fargo &
    Company 'and its parents or sister entities, divisions, departments, subsidiaries,
13  affiliates, predecessors, successors in interest, present and former members,
14  officers, directors, owners, employees, partners, limited partners, managers,
    agents, brokers, representatives and persons acting under its control or acting on
15  its behalf, including but not limited to Bonnie Leigh Lind."
16

17      (2)     Plaintiff's Subpoena does not permit a reasonable time for
    compliance and, thus, fails to comply with Rule 45(c)(3)(A)(i).
18

19      (3)     Plaintiff's Subpoena was not properly served.

20      (4)     Plaintiff failed to serve advance notice of the Subpoena on each
    party in violation of Rule 45(b)(1).
21

22      (5)     Plaintiff failed to tender the requisite fees pursuant to Rule
    45(b)(1).

23      (6)     Plaintiff's Subpoena was not accompanied by reimbursement of
24  anticipated expenses and did not alternatively provide assurances that Plaintiff
    agrees to remit reimbursement to Wells Fargo for the cost of copying and
25  producing responsive documents, including copying costs and time for labor.

26      (7)     Wells Fargo objects to the Subpoena to the Extent that it seeks
27  documents and information protested from disclosure by the attorney-client
    privilege, attorney-client work product doctrine, or any other applicable
28  privilege, and it will not produce such documents and information if any exist.

3

(8)    Wells Fargo objects to the Subpoena to the extent that the requests are vague, ambiguous, overbroad, and do not identify the documents and testimony sought with sufficient specificity to enable Wells Fargo to identify the documents and testimony sought and avoid undertaking an overbroad search entailing an unreasonable and large expense.

*Id.*

9.    Wells Fargo also indicated it would not be producing anyone for the deposition under the same grounds as its objections to producing documents. *Id.*

10.    After the initial objections to the Subpoena were received, Moon Mountain sent a letter to Wells Fargo on November 26, 2013 responding to each of its objections, including the service objections. A true and correct copy of the November 26, 2013 Letter from Jennifer Axel to Cynthia Swan is attached as Exhibit 3.

11.    Moon Mountain requested Wells Fargo to identify the cost associated with retrieving information responsive to the Subpoena. *See* Ex. 3 (11/26/13 Letter).

12.    Wells Fargo responded on December 18, 2013, indicated it still would not be complying with the Subpoena. A true and correct copy the December 18, 2013 Letter from Cynthia Swan to Jennifer Axel is attached as Exhibit 4.

13.    Wells Fargo acknowledged Moon Mountain's willingness to cure all issues related to service and/or compliance with Rule 45. *Id.*

14.    Wells Fargo has refused to provide Moon Mountain with the cost of compliance with the Subpoena, on the basis that no documents were discoverable under the Subpoena. *Id.*

15.    I spoke via telephone with Cynthia Swan, counsel for Wells Fargo, on January 29, 2014 regarding the Subpoena and Wells Fargo's objections.

16.    Ms. Swan indicated that the documents in the possession of Wells Fargo were either privileged or also in the possession of RCIC and that Wells Fargo would not be complying with the Subpoena in any manner.

17.    In our meet and confer, I provided Ms. Swan notice of the Court's Order Granting Moon Mountain's Motion to Compel (the "Order").

4

18. Ms. Swan indicated that she was aware of the Order, but continued to assert that the Order did not find that RCIC (and thus Wells Fargo) had waived the privilege with respect to communications with Henke-Bufkin.

19. The parties in the Arizona Action already have a protective order in place. I told Ms. Swan during our meet and confer that any information that Wells Fargo deems confidential can be designated as such under the protective order, or, in the alternative, Moon Mountain is willing to enter in to the same protective order in this Miscellaneous Action.

20. Moon Mountain brought the Arizona Action to recover damages sustained as a result of, among other things, RCIC's bad faith in handling the Claim and the Arbitration. A true and correct copy of the Complaint in the Arizona Action is attached hereto as Exhibit 5.

21. In 2005, RCIC issued Multi-peril Crop Insurance Polices numbered 04-951-787765 and 04-951-788712 (the "Policies") to Moon Mountain for the 2007 crop year. *See* Complaint, Ex. 5 at ¶¶ 14, 17.

22. After a catastrophic freeze in January 2007 caused approximately $47 million worth of damage to Moon Mountain's nursery crops, Moon Mountain submitted a claim to RCIC under the Policies (the "Claim"). *Id*. at ¶ 9.

23. The Claim was for a fraction of the amount of Moon Mountain's actual loss. *Id*. at ¶¶ 87, 94.

24. RCIC denied the claim, leading to a six-year coverage arbitration (the "Arbitration"). *Id*. at ¶¶ 35-96.

25. The Policies necessitated the parties arbitrate whether RCIC was required to indemnify Moon Mountain for its loss (the "Arbitration"). *Id*. at ¶ 45.

26. After numerous delays and questionable tactics by RCIC to avoid a determination, the arbitrator ultimately found that RCIC was required to indemnify Moon Mountain under the Policies (the "Arbitration Award"). A true and correct copy

5

1  of the Arbitration Award is attached hereto as <u>Exhibit 6</u>; *see also* Complaint, <u>Ex. 5</u> at ¶¶
2  47-97.

3      27.   RCIC's bad faith conduct has continued through discovery in the Arizona
4  Action, forcing Moon Mountain to file a Motion to Compel to obtain even RCIC's
5  claims file, which RCIC argued was cloaked in privilege. A true and correct copy of
6  Plaintiff's Motion to Compel, Doc. 33, is attached as <u>Exhibit 7</u>.

7      28.   On January 8, 2014, Judge Bolton granted Moon Mountain's Motion to
8  Compel, ordering that RCIC produce its "post-denial" claims file and finding that RCIC
9  had waived the attorney-client privilege with respect to communications with its
10  arbitration counsel, Henke-Bufkin, that related to "adjusting or denying the claims" (the
11  "Order"). A true and correct copy of the Order, Doc. 73 is attached as <u>Exhibit 8</u>.

12      29.   RCIC unsuccessfully argued that there was a distinction between "pre-
13  denial" and "post-denial" claims files. *Id.* at 2:23-3:18.

14      30.   RCIC also unsuccessfully argued that there was a distinction between
15  "coverage" and "arbitration" counsel that Judge Bolton found was not supported by
16  Arizona case law. *Id.* at 5:10-25.

17      31.   The Order provides that "Defendant has impliedly waived the attorney-
18  client privilege by asserting that its evaluation of the law was reasonable." *Id.* at 5:8-9.

19      32.   The Order provides that RCIC produce "relevant communications with
20  counsel." *Id.* at 7:5.

21      33.   Despite the clear terms of the Order, RCIC has produced only seven pages
22  of documents evidencing any claims adjustment.

23      34.   Nearly two months after the Order was issued (and on the eve of the
24  deadline that documents were promised to be disclosed to Moon Mountain), RCIC filed
25  a Motion for Clarification and Protective Order, claiming that Judge Bolton could not
26  have ordered that its communications with Henke-Bufkin were required to be produced.
27
28

6

1   A true and correct copy of the Motion for Clarification, Doc. 93, is attached as Exhibit
2   9.

3       35.   On the same day, Moon Mountain moved for sanctions for RCIC's failure
4   to comply with the Order. A true and correct copy of the Motion for Rule 37 Sanctions
5   is attached as Exhibit 10.

6       36.   On March 27, 2014, Judge Bolton denied RCIC's motion and ordered that
7   RCIC produce all of its communications with Henke-Bufkin from retention through the
8   date of the arbitration to the court for an *in-camera* review. A true and correct copy of
9   Judge Bolton's March 27, 2014 Order, Doc. 114, is attached as Exhibit 11.

10      37.   Judge Bolton reserved ruling on the Motion for Sanctions pending the *in
11  camera* review. *Id.*

12      38.   In the few pages of documents that RCIC actually disclosed, were
13  documents demonstrating that Henke-Bufkin was copying or blind-copying Wells Fargo
14  in-house attorney (Cynthia Swan) and Risk Manager (Cynthia Rowe), regarding the
15  Arbitration, rather than RCIC employees. A true and correct copy of discovery received
16  from RCIC in the Arizona Action is attached hereto as Exhibit 12 [RCIC002460-2461;
17  RCIC002023-2028; RCIC2400-2406]

18      39.   Indeed, RCIC has asserted privilege over these communications. A true
19  and correct copy of the privilege log received in the Arizona Action from RCIC is
20  attached as Exhibit 13.

21      40.   In its Motion for "Clarification", which really was a Motion for
22  Reconsideration, RCIC argued that it had no documents responsive to the Order
23  granting the Motion to Compel (despite its opposition to the motion in the first place).
24  *See* Motion for Clarification, Ex. 9 at 7:21-22.

25      41.   Moon Mountain has repeatedly requested that RCIC confirm it will be
26  providing documents from Wells Fargo to Judge Bolton pursuant to her order. RCIC
27
28

7

1  has not responded to these inquiries. True and correct copies of correspondence

2  between counsel for RCIC and Moon Mountain are attached hereto as Exhibit 14.

3      42.   Moon Mountain's complaints includes allegations that RCIC acted in

4  conscious disregard of the rights of insureds and ignored evidence generated during the

5  course of the coverage arbitration that it was liable for the Claim. Complaint, Ex. 5 at

6  ¶¶ 103, 123-131, 133-140, 142-146, 161.

7      43.   Wells Fargo contends, based on a single unpublished and inapposite case

8  from a district court in another circuit, *Unishippers Global Logistics, LLC v. DHL Exp.*

9  *(USA), Inc.*, 2011 WL 2634628 at *3 (D. Utah 2011), that reserve information is

10  "generally irrelevant." *See* December 18, 2013 Letter from C. Swan, Ex. 4.

11      44.   The few documents actually disclosed by RCIC indicate that Wells Fargo

12  (not RCIC) was responsible for the indemnity payment and the expenses of the

13  arbitration and was administering the Claim.

14      I declare under penalty of perjury, under the laws of the United States of

15  America, that the foregoing is true and correct.

16      EXECUTED this 3rd day of April, 2014, in Phoenix, Arizona.

17

18

19                    Jennifer J. Axel

20

21

22

23

24

25

26

27

28

8

# EXHIBIT 1

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| Moon Mountain Farms, LLC ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.   2:13-CV-00349-SRB |
| Rural Community Insurance Company ) | |
| ) | (If the action is pending in another district, state where: |
| *Defendant* ) | District of Arizona ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Wells Fargo & Co.
      c/o CSC - Lawyers Incorporating Service | 2710 Gateway Oaks Drive, Suite 150N | Sacramento, CA 95833

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit A attached hereto.

| Place: Veritext Corp. | Date and Time: |
|---|---|
| 101 Montgomery Street, Suite 450 | 10/14/2013 9:30 am |
| San Francisco, CA 94104 | |

The deposition will be recorded by this method:   _oral examination by an officer authorized to administer oaths_

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

   See Exhibit A attached hereto.


The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   9/26/2013

   *CLERK OF COURT*

                                          OR   _____

   _____                    _____
   *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Moon Mountain Farms,LLC
                                                              , who issues or requests this subpoena, are:

Troy B. Froderman | Jonathan G. Brinson | Jennifer J. Axel
Polsinelli PC, One E. Washington, #1200, Phoenix, AZ 85004 | Phone: (602) 650-2000 | Fax: (602) 264-7033
tfroderman@polsinelli.com | jbrinson@polsinelli.com | jaxel@polsinelli.com

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:13-CV-00349-SRB

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*

was received by me on *(date)*                     .

☐ I served the subpoena by delivering a copy to the named individual as follows:

on *(date)*                     ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$                     .

My fees are $                     for travel and $                     for services, for a total of $          0.00

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

### INSTRUCTIONS

1.      Unless otherwise specified, the documents requested herein encompass all documents that are or were within your possession, custody or control. This request is not limited to documents prepared by you, but rather encompasses all documents described regardless of their source. If any document requested herein no longer exists, or no longer is within your possession, custody or control or is not produced by you because of a claim of privilege or for any other reason, then identify such document, state the reason for withholding it and state the present or last known location of such document.

2.      If, for any reason, you are unable to produce in full any document requested:

   (a)    Produce each such document to the fullest extent possible;
   (b)    Specify the reasons for your inability to produce the remainder; and
   (c)    State in detail whatever information, knowledge or belief you have concerning the whereabouts and substance of each document not produced in full.

3.      If any document requested was at one time in existence, but is no longer in existence, please state for each document as to which that is the case:

   (a)    The type of document (i.e., letter, memorandum, etc.);

   (b)    The types of information contained therein;

   (c)    The date upon which it ceased to exist;

   (d)    The circumstances under which it ceased to exist;

   (e)    The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

   (f)    The identity of all persons having knowledge or who had knowledge of the contents thereof.

4.      For each document requested which you are unable to produce and which was at any time within your possession, custody or control, or to which you had access at any time, specify in detail:

46053822.1

(a)     The nature of the document (i.e., letter, memorandum, etc.);

(b)     The author of the document;

(c)     All recipients of the document and any copy thereof;

(d)     A summary of the information contained in the document;

(e)     The date on which you lost, relinquished, or otherwise ceased to have possession, custody or control of, or access to the document;

(f)     Identify all persons having knowledge of the circumstances whereby you lost, relinquished, or otherwise ceased to have possession, custody or control of, or access to the document; and

(g)     Identify all persons who have or have had knowledge of the contents of the document, in full or in part.

5.      As to each document produced, indicate the specific request or requests pursuant to which you have produced it. In the event you seek to withhold or do withhold any document, in whole or in part, on the basis that it is not subject to discovery, produce a list of all such documents and, as to each such document, state: (1) the name of each author, writer, sender or initiator of the document; (2) the name of each recipient, addressee or party to whom such document was sent or intended to be sent; (3) the name of each and every person who received a copy of the document; (4) the date of the document or, if no date appears on the document, when the document was prepared; (5) the title of the document, or if it has no title then such other description of the document; and (6) the grounds claimed for withholding the document from discovery (i.e., any claim of privilege, work product, or any other recognized grounds), and the factual basis for such claims.

6.      If you claim that privilege is a reason for not fully answering any discovery request, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of the claim. If the claim of privilege relates to identification of a document, also state the date that the document was prepared, the author, the addressee, and the general subject matter of the document.

2

46053822.1

7.     This is a continuing request for production of documents.   If, after responding to this Subpoena Duces Tecum, you obtain, generate, receive, or become aware of any further documents responsive to this request, you are required to produce such additional documents to Plaintiffs and to supplement your response and production pursuant to Rule 26 of the Federal Rules of Civil Procedure.

## DEFINITIONS

1.     As used in these requests "you" or "your" means Wells Fargo & Company and its parent or sister entities, divisions, departments, subsidiaries, affiliates, predecessors, successors in interest, present and former members, officers, directors, owners, employees, partners, limited partners, managers, agents, brokers, representatives and persons under its control or acting on its behalf, including but not limited to Bonnie Leigh Lind.

2.     "RCIC" means Rural Community Insurance Company and its parent or sister entities, including but not limited to Rural Community Insurance Services, divisions, departments, subsidiaries, affiliates, predecessors, successors in interest, present and former members, officers, directors, owners, employees, partners, limited partners, managers, agents, brokers, representatives and persons under its control or acting on its behalf.

3.     "MMF" means Moon Mountain Farms, LLC and its parent or sister entities, divisions, departments, subsidiaries, affiliates, predecessors, successors in interest, present and former members, officers, directors, owners, employees, partners, limited partners, managers, agents, brokers, representatives and persons under its control or acting on its behalf.

4.     "Policies" means Multi-peril Crop Insurance Policies ("MCPI") numbered CA-951-787765 and AZ-951-788712 issued by RCIC to MMF.

5.     The "Claim" means the claims filed by MMF on or around July 17, 2007 pursuant to the Policies for a loss event that occurred in January 2007.

3

46053822.1

6.　"Arbitration" means the arbitration matter between the parties in front of the American Arbitration Association, Case No. 76 430 Y 00291 08.

7.　"Arbitration Award" means the Final Award issued in the Arbitration on January 15, 2013.

8.　"January 2007 Freeze" refers to the cold weather event affecting California and Arizona on or around January 12-16, 2007.

9.　The term "document(s)" as used in this subpoena includes all electronic media or other tangible forms in which intelligence or information is stored, as well as all written or graphic matter of every type and description, however produced or reproduced, WHETHER DRAFT OR FINAL, original or reproduction, including but not limited to electronic mail messages, electronic data files (including textual, spreadsheet and database files), web pages, letters, communication, correspondence, handwritten notes, memoranda, transcripts or minutes of meetings, contracts, agreements, licenses, illustrations, films, microfilm, telegrams, written analyses, reports, memoranda made of any oral communications, papers, books, newspaper articles, magazines, advertisements, periodicals, bulletins, circulars, pamphlets, statements, notices, rules, regulations, directives, teletype and telefax messages, intraoffice and interoffice communications, financial statements, ledgers, books of account, proposals, prospectuses, offers, orders, receipts, returns, invoices, cancelled checks, statistics, studies, working papers, calendars, appointment books, diaries, journals, time sheets, logs, movies, tapes for visual or audio reproduction, recordings or materials similar to any of the foregoing, however denominated, and including writings, forms, drawings, graphs, charts, photographs, data processing results, printouts and computations (both in existence and stored in memory components) and other compilations from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form, as well as all drafts, alterations, modifications, changes, amendments, suspensions and interpretations of any of the foregoing and any records of documents that have been

4

destroyed. THE TERM "DOCUMENT(S)" INCLUDES ALL COPIES OF A DOCUMENT WHICH CONTAIN ANY ADDITIONAL WRITING, UNDERLINING, NOTES, DELETIONS OR ANY OTHER MARKINGS OR NOTATIONS, OR ARE OTHERWISE NOT IDENTICAL COPIES OF THE ORIGINAL.

10.    The terms "individual," "person," or "persons" include natural persons, firms, partnerships, associations, joint ventures and corporations, or any business, legal or government entity, organization or association.

11.    The terms "relates to" and "refers to" (including other tense forms of those terms) mean describing, evidencing, constituting, reflecting, showing, comprising, considering, discussing, regarding, setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

12.    The terms "correspondence" or includes all letters, telegrams, notices, messages, or other written communications or memoranda, or other records of conversations, meetings, conferences or other oral communications.

13.    The conjunctions "and" and "or" as used herein shall be construed both conjunctively and disjunctively and each shall include the other whenever such dual construction will serve to bring within the scope of these requests for production information and/or documents which otherwise would not be brought within their scope.

14.    The term "meeting" shall mean any encounter between two or more persons during which a communication of any kind occurred and shall include, but not be limited to, formal gatherings, conversations and telephone calls.

## REQUEST FOR DOCUMENTS AND THINGS

1. All documents regarding the Policies, the Claim, the Arbitration, or the Arbitration Award.

2. All documents regarding the amount of reserves set aside by Wells Fargo or RCIC for any indemnification or bad faith claims filed against RCIC.

## TOPICS OF DEPOSITION

1. RCIC's relationship with Wells Fargo

2. The Policies, the Claim, the Arbitration, or the Arbitration Award.

3. The handling, including denial, of the Claim.

4. The amount of reserves set aside by Wells Fargo or RCIC for any indemnification or bad faith claims filed against RCIC.

46053822.1